Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1901 | **DATE** | 7/11/2002 |
| **CASE TITLE** | King vs. Village of Gilberts | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth on the attached Memorandum Opinion and Order, defendant Isitoro's motion for summary judgment (28-1) is granted; the motion for summary judgment filed by Joswick and the Village of Gilberts (29-1) is granted in part and denied in part. The case is set for a status hearing on 7/30/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 16 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | WB | 40 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TAMMIE C. KING,            )
                           )
           Plaintiff,      )
                           )
   v.                      )     Case No. 01 C 1901
                           )
VILLAGE OF GILBERTS, VILLAGE )
OF GILBERTS POLICE          )
DEPARTMENT, MICHAEL         )
ISITORO, and MIKE JOSWICK   )
                            )
           Defendants.      )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Tammie King, a former part-time police office for the Village of Gilberts, has sued the Village, its chief of police, and the Village president for violations of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 1983, 1985, and 1986. The Village and Michael Joswick, the police chief, have filed a joint motion for summary judgment; Michael Isitoro, the Village president, has filed a separate motion for summary judgment.

### Facts

From November 1997 until she was terminated in April 2000, plaintiff Tammie King worked for the Village of Gilberts as a part-time police officer. During her tenure with the police department, King generally performed her job in a satisfactory manner although she did receive some written reprimands for infractions of police department rules. In June 1999, King missed a required weapons training session because she recently had been artificially inseminated

40

and feared adverse effects from exposure to lead at the training session. King explained her absence from the session and agreed to make it up. For missing the session, however, King received a written Corrective Action Report from Chief Joswick. Thereafter, according to King, Joswick made numerous comments about her attempts to become pregnant, including that he would not pay her "when [she] got pregnant" and that he would not "need [her] once [she] got pregnant."

In approximately November 1999, the Village began seeking applicants for a new full-time police officer position that was to be created in the Spring of 2000. King applied for the position, as did fellow part-time officer, Todd Block, and one other candidate. In February 2000, Joswick announced his decision to award the full-time position to Block, who at that time was still in officer training school. King asked Joswick why she did not receive the position; according to King, Joswick informed her that it was because she "would become pregnant and be a waste of his manpower and payroll" and that he "wasn't going to tolerate it."

King was fired on April 3, 2000. According to the defendants, King was terminated because, in late March 2000, she had a conversation with fellow police officer Joan Jaeger, which Jaeger then relayed to Joswick. During that conversation, King told Jaeger that she had not received a full-time position because she was trying to become pregnant; she also told Jaeger that Chief Joswick had entered her home and searched through her mail while she was not there. Defendants contend that King's comments about Joswick were lies and that she was fired for making false statements.

Defendant Isitoro is the president of the Village of Gilberts. He has never met King, nor does he have any direct supervisory authority over her.

**Discussion**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

I.  Count 1: Title VII Pregnancy Discrimination Claim Against The Village

In Count 1 of the complaint, King asserts that she was subjected to pregnancy discrimination in violation of Title VII. King claims that she was denied a full time position with Village – which was instead awarded to a male employee with less seniority – because she was trying to get pregnant. Title VII prohibits discrimination on the basis of an employee's gender, race, color, religion, or national origin. 42 U.S.C. § 2000e-2(a). In 1978, Congress amended Title VII to prohibit discrimination based on pregnancy: "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ...." 42 U.S.C. § 2000e(k).

To establish her Title VII claim, King may offer direct evidence of discrimination or may proceed under the indirect burden-shifting method set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). King attempts to proceed under both methods. To establish discrimination by the direct method, King must provide evidence that the trier of fact can interpret as an acknowledgment or indication of the employer's discriminatory intent. *See Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 396 (7th Cir. 1997). Such evidence

-3-

must relate "to the motivation of the decision-maker responsible for the contested decision." *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996)). In support of her claim, King says that Chief Joswick told her that she would not receive the full-time position because she "would become pregnant and be a waste of his manpower and payroll and he [Joswick] was not going to tolerate it." King Deposition at 103. King also contends that Joswick made other derogatory comments about King's attempts to become pregnant. *E.g.*, King Deposition at 98-99.

In response, the Village initially argues that King was never pregnant; she thus cannot invoke the protections of the Pregnancy Discrimination Act. However, the PDA serves to address discrimination targeted at both actual and potential pregnancies. *See, e.g., Pacourek v. Inland Steel Company*, 858 F. Supp. 1393, 1401 (N.D. Ill. 1994) ("Discrimination against an employee because she intends to, is trying to, or simply has the potential to become pregnant is ... illegal discrimination"); *Maldonado v. U.S. Bank*, 186 F. 3d 759, 762 (7th Cir. 1999) (PDA specifically designed "to address the stereotype that 'women are less desirable employees because they are liable to become pregnant'") (quoting *Sheehan v. Donlen Corp.*, 173 F.3d 1039, 1044-45 (7th Cir. 1999)).

The Village further argues that (1) King did not suffer an adverse employment action because the full-time position did not become technically available until after King's termination; and (2) Block, the male employee who received the position, was more qualified. The second argument, which we will address below, goes only to whether King can establish discrimination using the indirect burden-shifting method.

With respect to its first argument, the Village argues that even if Joswick made

-4-

the alleged comments, King cannot prevail because the full-time position was not technically "open" until after she was terminated. In support of its position, the Village cites *Rush v. McDonald's Corp.*, 760 F. Supp. 1349 (S.D. Ind. 1991) and *Morgan v. Federal Home Loan Mortgage Corp.*, 172 F. Supp. 2d 98 (D.D.C. 2001), for the proposition that a discriminatory failure to hire claim must be based on the plaintiff's application for an available job. Though the absence of any vacant positions can protect an employer from this type of discrimination claim, the circumstances of this case do not fall so neatly in that category. King offers evidence that in November 1999, the Village began seeking applicants for the full-time position that was to be created in the spring of 2000, and that in February 2000 (prior to King's termination), Joswick announced his decision to award the position to Block and informed King that she did not receive the position. Joswick Deposition at 78, 82-84. Though King was terminated before Block actually took over the new spot, a reasonable jury could conclude that but for Joswick's allegedly discriminatory decision not to hire King full-time, her conversation with Jaeger that purportedly led to her termination (which included a "complaint" about the denial of the full-time job) would not have taken place. Thus the fact that the full-time position did not actually take effect until after King's termination is not fatal to her claim.

Although King can survive summary judgment based on direct evidence alone, she also survives summary judgment under the indirect *McDonnell Douglas* burden-shifting method. To prevail under a *McDonnell Douglas* approach, King must first establish a prima facie case of discrimination. To do this, King must provide evidence from which a jury could conclude that: (1) she belongs to a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated non-protected

-5-

employees were treated more favorably. *Stockett v. Muncie Indiana Transit System*, 221 F.3d 997, 1001 (7th Cir. 2000). If a plaintiff can establish a prima facie case, the burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for its employment decision. *Id.* If the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason is just a pretext for discrimination. *Id.* Though the burden of producing evidence shifts between the employee and the employer, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993) (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

The Village does not challenge King's ability to make out a prima facie case except with regard to the adverse action requirement, which we have already addressed. The burden thus shifts to the Village to provide a non-discriminatory reason for the promotion decision. The Village asserts that Officer Block was more qualified than King for the position, and we therefore turn to the question of pretext. An employee can survive a motion for summary judgment on the issue of pretext if she produces evidence that calls into question the employer's proffered reasons for the employment decision. *O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir. 1997). King offers some evidence that Block was not the more qualified candidate; he was still in training and had only been employed by the Village for a few months when he was awarded the position. This is evidence from which a reasonable jury could conclude that the Village's stated reason for denial of the promotion was a pretext. *See also Troupe v. May Department Stores Company*, 20 F.3d 734, 736 (7th Cir. 1994) (evidence that employees similarly situated to plaintiff except for the protected characteristic received more favorable

treatment is enough to support a judgment for plaintiff). The Village's motion for summary judgment on Count 1 is therefore denied as to King's claims regarding the full-time position awarded to Block.

King also suggests in her complaint that she was subjected to discrimination in discipline; she alleges that "[a]fter Joswick found out that King was trying to get pregnant he ... disciplin[ed] her when other employees were not disciplined for engaging in similar acts." Amended Complaint, ¶ 15a. King cannot maintain a separate claim based on these allegations, for negative job evaluations alone do not constitute adverse action sufficient to trigger Title VII, *e.g.*, *Smart v. Ball State University*, 89 F.3d 437, 441-42 (7th Cir. 1996), and there is no claim that King was terminated based on these infractions.

As part of Count 1, King also alleges that she was subjected to a hostile work environment in that Officer Joswick repeatedly used the word "cunt" in her presence. In response, the Village argues that King never complained about the conduct and that in the absence of such complaints, its existing sexual harassment policy is enough to shield it from liability. The Court agrees. When an employee fails to take advantage of any preventative or corrective opportunities provided by an employer, a policy condemning sexual harassment is sufficient to avoid liability. *Shaw v. Auto Zone*, 180 F.3d 806, 810-12 (7th Cir. 1999). There is no dispute that King did not avail herself of the Village's procedures for filing a complaint of sexual harassment. King argues that it would have been useless to bring the behavior to Joswick's attention because he was already aware of his own conduct. However, King has offered no reason why she could not have complained to higher level supervisors or the Village President, which is precisely what the Village's sexual harassment policy contemplates. *See*

Sexual Harassment Policy dated October 23, 1998. We thus grant the Village's motion with respect to King's hostile work environment claim.

II.     Count 2: Title VII Retaliation Claim Against the Village

In Count 2, King asserts that the Village fired her because she complained to her superiors about Joswick's alleged pregnancy-related discrimination. Title VII makes it unlawful for an employer to retaliate against its employees for opposing a discriminatory employment practice. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, King must show that (1) she engaged in protected expression; (2) she suffered an adverse action by her employer; and (3) there is a causal link between the two. *Logan v. Kautex Textron North America*, 259 F.3d 635, 640 (7th Cir. 2001)(citing *Oates v. Discovery Zone*, 116 F.3d 1161, 1172 (7th Cir. 1997)). The Village argues that King cannot sustain her retaliation claim because she was terminated based on her false statements about Joswick and that conversation is not "protected activity" within the meaning of Title VII. Village's Memorandum in Support of Summary Judgment at 7.

The Village's argument, however, assumes that its version of events is correct – that King was terminated because she told falsehoods to a co-worker about the Chief searching her home and not because she complained to superiors about discriminatory conduct. In contrast, King has offered evidence that she complained to her superiors about Joswick's discriminatory conduct; that upon learning that King had complained, Joswick warned her to "keep her mouth shut"; that after the warning, King told Officer Jaeger about Joswick's discriminatory conduct; and that shortly thereafter she was fired. A reasonable jury could conclude from this evidence that King's termination was in retaliation for protected expression – *i.e.*, her complaints to her

-8-

supervisors about pregnancy discrimination – and summary judgment on Count 2 is therefore inappropriate.

III.     Count 3: Section 1983 Claim Against the Village, Joswick, and Isitoro

In Count 3, King makes claims under 42 U.S.C. § 1983 against the Village, Joswick and Isitoro for violation of her equal protection and first amendment rights. As an initial matter, King sues Joswick and Isitoro in both their individual and official capacities. However, claims against individuals in their official capacities are simply suits against the municipality. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Accordingly, we will address the official capacity claims as part of King's claims against the Village.

We begin with King's claims against Joswick in his individual capacity. To succeed on her Section 1983 claims, King must establish that Joswick acted under color of state law and that he intentionally deprived her of "rights, privileges, or immunities secured by the Constitution or laws of the United States." *New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1479 (7th Cir. 1990) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). The parties do not dispute that Joswick acted under color of state law, so we focus on the second part of the test. King's equal protection claim is premised on the same allegations of gender and pregnancy discrimination that formed the basis of her Title VII claims. We found that King has provided evidence from which a reasonable fact finder could conclude that Joswick treated King differently from her peers on the basis of her gender and pregnancy status, and summary judgment on her equal protection claim is thus inappropriate.

Joswick argues that he is entitled to qualified immunity for his actions. The Court

disagrees. Gender and pregnancy discrimination have long been prohibited in the workplace. Though a fact finder might ultimately conclude that Joswick's conduct did not constitute prohibited discrimination, genuine issues of fact exist that preclude us from concluding that qualified immunity is warranted at the summary judgment stage.

As part of Count 3, King also alleges that Joswick violated her First Amendment free speech rights by terminating her based on her comments regarding Joswick's conduct. The Supreme Court established a framework for evaluating such claims in *Connick v. Myers*, 461 U.S. 138 (1983). Under *Connick*, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147. King argues that pregnancy discrimination by the police chief is a matter of public concern. Though that may be true, *Connick* makes clear that the question whether an employee's speech implicates a matter of public concern is determined by the "content, form, and context" of the speech. *Id.* at 148. Speech that is not otherwise a public concern "does not attain that status because its subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Id.* at 148, n.8. In this case, King's expression was made to a single fellow officer, in a casual context, and involved her own employment concerns. King did not seek to inform the public that the Village police department was engaging in discriminatory practices; rather, she was complaining about her own dissatisfaction. We conclude that this speech did not involve a matter of public concern giving rise to First Amendment protection – a result we reached under similar circumstances in *Collins*

*v. Village of Woodridge*, 96 F. Supp. 2d 744, 755 (N.D. Ill. 2000). King therefore cannot maintain her § 1983 claim based on a First Amendment violation.

We turn next to Isitoro's motion for summary judgment on Count 3. King seeks damages from Isitoro pursuant to Section § 1983 based on her allegations that Isitoro was aware of and "failed to prevent" his subordinate Joswick from violating King's constitutional rights. However, "[t]he doctrine of respondeat superior cannot be used to impose § 1983 liability on a supervisor for the conduct of a subordinate violating a plaintiff's constitutional rights." *Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). "Supervisory liability will be found, however, if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it. ... [T]o be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct." *Lanigan v. Village of East Hazel Crest, Illinois*, 110 F.3d 467, 477 (7th Cir. 1997). King has provided no evidence that Isitoro had any knowledge of any discriminatory or constitutionally suspect conduct on Joswick's part. Indeed, King testified that her only basis for suing Isitoro was that he never came to her to discuss the reasons for her termination. *See* King Deposition at 20. To survive summary judgment, King must produce some evidence to support her claims. Bald suspicions, without more, are not enough, and we therefore grant Isitoro's motion for summary judgment on Count 3.

We finally address King's Section 1983 claim against the Village. In actions under 42 U.S.C. §1983, a municipal entity may be held liable only if the alleged constitutional deprivation was caused by (1) an express policy of the municipality; (2) a widespread practice that, although not contained in any express policy, is so permanent and well settled that it constitutes a policy with the force of law; or (3) a municipal official with final policymaking

authority. *E.g., Monell v. Department of Social Services,* 436 U.S. 658 (1978); *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995). King attempts to proceed under the third element; she argues that Joswick had final decision-making authority for the Village police department. The Village counters that it is the Village Board of Trustees that had final policy-making authority. The determination of whether a municipal employee is a final policymaker is one of local law. *See Auriemma v. Rice,* 957 F.2d 397, 400-01 (7th Cir. 1992). King points to the Village's Standard Operating Procedures for the police department, which mandates that "[t]he chief is the department's policymaker," that "only the chief determines policy;" and that "the chief of police issues rules and regulations." *See* Plaintiff's Response to Defendants' Statement of Facts, Exhibit F. In contrast, the Village has directed us to no local authority to support its position. At this point, King's evidence is sufficient to avoid summary judgment on her claim against the Village.

IV. Count 4: Section 1985 Claim Against Joswick and Isitoro

In Count 4, King alleges that Joswick and Isitoro violated 42 U.S.C. § 1985 by conspiring to violate her constitutional rights. Section 1985 provides that "[i]f two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws ... whereby another is injured ... the party so injured or deprived may have an action for the recovery of damages ...." 42 U.S.C. § 1985(3). As discussed above, King has provided no evidence that Isitoro knew of, or participated in, any constitutionally-suspect conduct. Accordingly, he and Joswick cannot be found to have conspired to violate King's rights. Defendants' motions for summary judgment on Count 4 are granted.

-12-

V.  Count 5: § 1986 Claim Against Isitoro

In Count 5, King asserts a claim against Isitoro pursuant to 42 U.S.C. § 1986. Section 1986 provides "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do" shall be held liable. 42 U.S.C. § 1986. However, as discussed above, King has provided no evidence that Isitoro knew of any alleged wrongs being committed. Isitoro's motion as to Count 5 is granted.

**Conclusion**

For the foregoing reasons, defendant Isitoro's motion for summary judgment [docket item # 28-1] is granted; the motion for summary judgment filed by Joswick and the Village of Gilberts [docket item # 29-1] is granted in part and denied in part as outlined above. The case is set for a status hearing on July 30, 2002, at 9:30 a.m.

Dated: July 11, 2002

MATTHEW F. KENNELLY
United States District Judge

-13-